UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| REBECCA L., | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 2:24-cv-00217-KFW |
| | ) |
| LELAND DUDEK, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|       Defendant | ) |

## MEMORANDUM DECISION[1]

The Plaintiff in this Social Security Disability appeal contends that the Administrative Law Judge (ALJ) erred in concluding that she had no severe impairments based on faulty evaluations of the medical opinion evidence and her testimony regarding the side effects of her medication. *See* Plaintiff's Brief (ECF No. 12). I discern no error and affirm the Commissioner's decision.

### I. Background

The Plaintiff applied for benefits in March 2021. *See* Record at 15. After her claim was denied at the initial and reconsideration levels, the Plaintiff requested a hearing before an ALJ. *See id.* That hearing took place in May 2023, following which the ALJ issued a written decision finding the Plaintiff had the medically determinable impairments of generalized anxiety disorder, cyclothymic disorder,

---

[1] The parties have consented to me presiding over all proceedings in this action including the entry of judgment. *See* ECF No. 7.

1

depressive disorder, borderline personality disorder, and bipolar disorder, but that those impairments were not severe and the Plaintiff was therefore not disabled. *See id.* 15-24. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-3, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 404.981.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III. Discussion

The Plaintiff argues that the ALJ erroneously evaluated the opinions of treating provider Barbara Erkson, LCPC, LADC; consulting examiners Charles Muncie, Psy.D., and Donna M. Gates, Ph.D.; and agency nonexamining psychological

2

consultants Brian Stahl, Ph.D., and Mary Alyce Burkhart, Ph.D. *See* Plaintiff's Brief at 7-19.

In a July 2021 opinion, Counselor Erkson listed the Plaintiff's diagnoses as generalized anxiety and cyclothymia, noting that she "struggled w[ith] significant fluctuations and being overwhelmed" but that she had "recently increased [her] med[icine] dosage[,] which has been helpful." Record at 324, 329. Counselor Erkson further noted that the Plaintiff had "struggled for much of her life with learning disorder and Cyclothymia" and that her symptoms were "often severe [and] impact[ed] her] functioning"—by, for example, causing her to have thoughts of self-harm—and that the Plaintiff would "likely need ongoing med[icine management and] counseling for the foreseeable future." *Id.* at 324. Nevertheless, Counselor Erkson rated the Plaintiff's abilities and aptitudes to complete work-related activities all as "Unlimited or Very Good" or "Limited but satisfactory" except she opined that the Plaintiff would struggle to complete a normal workday and/or workweek and would likely miss three to four days of work per month. *Id.* at 326-28.

The ALJ found Counselor Erkson's opinion "partially persuasive," explaining,

> While [Counselor Erkson's] opinion is supported by her treatment of the [Plaintiff], it is a check-box form largely devoid of narrative explanation or rationale. The unlimited or very good functional abilities are consistent with treatment notes that describe symptom improvement and stability with treatment, and with the largely normal findings on mental status examinations. The unlimited or very good functional abilities are also consistent with the opinions of Dr. Stahl and Dr. Burkhart . . . . The undersigned finds [Counselor] Erkson's opinion to be unpersuasive with respect to the limitations in completing a normal workday and workweek and dealing with normal work stress, and with expected absences from work. Such limitations are inconsistent with the largely normal mental status findings, and with

> the opinions of Dr. Stahl and Dr. Burkhart. Such limitations are also inconsistent with the [Plaintiff's] demonstrated ability to perform a wide range of activities on a regular and continuing basis. The [Plaintiff] reported that she spent her days caring for her daughter, doing housework, and managing her household. [She] reported that she cared for pets, prepared daily meals, could drive a car and go out alone, shop in stores and by computer, pay bills, count change, handle a savings account and use a checkbook/money orders.

*Id.* at 22-23 (citations omitted).

Dr. Muncie evaluated the Plaintiff in July 2021. *See id.* at 330-33. Based on that evaluation, Dr. Muncie diagnosed the Plaintiff with "Cyclothymia (by history)" and opined,

> [The Plaintiff] appears to possess at least average verbal reasoning skills and is capable of providing care for her young child as well as managing various affairs within the home. It is likely that anxiety associated with stressors in a work environment when prolonged may negatively impact her ability to persist on tasks and maintain her attention and concentration. She is capable of communicating her thoughts in a clear and logical manner and she is capable of following instructions and verbal commands.

*Id.* at 332-33.

The ALJ found Dr. Muncie's opinion "unpersuasive," explaining,

> His opinion is supported by examination of the [Plaintiff]. However, Dr. Muncie did not fully support his opinion with specific work-related functional limitations. Dr. Muncie used undefined terms such as "prolonged" and "negatively impact", without assessing specific work-related functional limitations to give meaning to those terms. . . . Dr. Muncie himself noted only slight impairment of short-term auditory memory and concentration. Furthermore, [a]ttention was otherwise described as intact on multiple examinations performed since the alleged onset date. The [Plaintiff] was noted to be able to follow conversation on multiple examinations performed since the alleged onset date. The [Plaintiff] was consistently alert and/or oriented on multiple examinations performed since the alleged onset date. The limitations assessed by Dr. Muncie are also inconsistent with the [Plaintiff's] demonstrated ability to perform a wide range of activities,

>such as caring for her daughter, doing housework, and managing her household, on a regular and continuing basis. Dr. Muncie's opinion is inconsistent with the opinions of Dr. Stahl and Dr. Burkhart . . . .

*Id.* at 23.

Dr. Gates evaluated the Plaintiff in August 2022. *See id.* at 431-35. Based on that evaluation, Dr. Gates diagnosed the Plaintiff with generalized anxiety disorder, depressive disorder, and borderline personality disorder but opined that she "presented with no clinically significant mental health limitations that are expected to preclude her from working." *Id.* at 434-35. Dr. Gates explained that the Plaintiff was "capable of following work rules, relating adequately to others, and using adequate judgement for jobs within her vocational ability" and could "manage a mild level of work-related stress and function independently on simple tasks." *Id.* at 434.

The ALJ found Dr. Gates's opinion "mostly persuasive" as it was "supported by examination of the [Plaintiff] and by assessment of specific work-related functional limitations and abilities" and "largely consistent with the opinions of Dr. Stahl and Dr. Burkhart." *Id.* at 22. But the ALJ found Dr. Gates's opinion that the Plaintiff was limited "to managing a mild level of stress and simple tasks" unpersuasive because such limitations were "inconsistent with her opinion that the" Plaintiff had no clinically significant mental health limitations and "also inconsistent with the largely normal mental status findings from" her examination of the Plaintiff. *Id.*

Dr. Stahl evaluated the Plaintiff's claim at the initial level of review in August 2021. *See id.* at 58-62. Dr. Stahl opined that the Plaintiff had "benefited from treatment" for mood and anxiety and "showed generally good mental status," her

5

mood and anxiety disorders "appear[ed] well managed," and her associated limitations were nonsevere. *Id.* at 61. He noted that the Plaintiff's previous employment involved complex work and ended because of the COVID-19 pandemic; she was currently focused "on being a mom"; and she was able to manage her household, drive, shop, manage money, and relate adequately to healthcare providers. *Id.* Dr. Stahl discounted the opinion of Dr. Muncie as "an overestimate of the severity of the [Plaintiff's] restrictions/limitations." *Id.* at 61-62.

Dr. Burkhart considered the Plaintiff's claim at the reconsideration level of review in August 2022. *See id.* at 65-70. Like Dr. Stahl, Dr. Burkhart ultimately concluded that the Plaintiff's mood and anxiety disorders were nonsevere. *See id.* at 67. Dr. Burkhart explained,

> [The Plaintiff] reported continuing with therapy and psych meds with benefit. She continues to care for her three year old daughter, the home and the finances. When asked about her mood, [the Plaintiff] reported it had been better than it was and steadily improving. She reported her mood was much improved now. [She] reported she no longer wakes up worrying. [She] presented on time [and] was adequately groomed. Eye contact was good. [She] was friendly and cooperative. She smiled easily and was articulate. Affect was happy and there were no anxiety or depressive features evident [during Dr. Gates's consultative examination.] [She] was described as warmly relating. Speech was good, thought processes logical and goal oriented. Judgment was reported adequate for day-today functioning. [She] was oriented with estimated intellectual functioning in the average range. General knowledge was good. [She] was thought capable of managing her finances. [Dr. Gates] reported [she] presented with no clinically significant [mental health] limitations that were expected to preclude her from working. No work-related limitations were offered. [Her] report and presentation was consistent with [Dr. Muncie's initial evaluation and the mental health] treatment evidence.

6

*Id.* at 68. Dr. Burkhart found Dr. Muncie's opinion to be an overestimate of the severity of Plaintiff's limitations. *Id.* at 68-69. In contrast, Dr. Burkhart found Dr. Gates's opinion consistent with her examination of the Plaintiff as well as other evidence of record. *Id.* at 69.

The ALJ found the Drs. Stahl's and Burkhart's opinions "persuasive," explaining,

> Dr. Stahl and Dr. Burkhart are highly qualified psychologists who are experts in the evaluation of the psychological issues in disability claims . . . . Their opinions are supported by review of an extensive amount of medical evidence, and records submitted after they prepared their assessments do not describe significant worsening. Dr. Stahl and Dr. Burkhart provided extensive rationales to support their opinions, citing to specific evidence of record, and resolving inconsistencies in the record. They assessed specific work-related functional limitations and abilities consistent with the medical evidence of record . . . . In particular, their opinions are consistent with treatment notes that describe symptom improvement and stability with treatment. Their opinions are also consistent with mental status findings that generally describe the [Plaintiff] as alert, oriented, cooperative and friendly with normal speech, normal memory, intact attention, logical/goal-oriented/goal-directed thought processes, average intellectual functioning, adequate/appropriate/good eye contact, normal thought content, adequate/intact/good judgment, intact/full insight, and intact fund of knowledge. The opinions of Dr. Stahl and Dr. Burkhart are consistent with one another. Thus, the opinion and clinical evidence of record supports the finding of no severe impairment.

*Id.* at 22.

The Plaintiff argues that the Drs. Stahl's and Burkhart's opinions cannot serve as substantial evidence because they did not acknowledge Counselor Erkson's opinion, which was "erroneously labeled as 'Office Treatment Records.'" Plaintiff's Brief at 9-10. The Plaintiff admits, however, that Counselor Erkson's opinion was part of the record at the time of both Drs. Stahl's and Burkhart's reviews, *see id.* at 9,

7

and she does not cogently rebut the presumption that they "reviewed all then-available file evidence," *Pierce v. Astrue*, No. 1:10-cv-242-JAW, 2011 WL 2678919, at *4 (D. Me. July 7, 2011) (rec. dec.), *aff'd*, 2011 WL 3270251 (D. Me. July 29, 2011). Moreover, even if Drs. Stahl and Burkhart did overlook Counselor Erkson's opinion, that error would be harmless because the ALJ found the more restrictive aspects of Counselor Erkson's opinion unpersuasive. *See e.g.*, *Yearling v. Colvin*, 292 F. Supp. 3d 515, 520 (D. Mass. 2017) (holding that it was "irrelevant" that a nonexamining consultant did not see later submitted opinion that the ALJ "rejected . . . based upon substantial contradictory evidence in the record").

The Plaintiff also argues that Dr. Burkhart ignored aspects of Dr. Gates's opinion, including Dr. Gates's conclusion that the Plaintiff could only manage "a mild level of stress and simple tasks." Plaintiff's Brief at 12, 14. Because Dr. Burkhart explicitly acknowledged Dr. Gates's opinion and indicated that it was not more restrictive than her own, *see* Record at 69, I am not in a position to second guess her interpretation of Dr. Gates's conclusions, particularly where her ultimate conclusion that the Plaintiff's impairments were not severe is consistent with Dr. Gates's conclusion that the Plaintiff "presented with no clinically significant mental health limitations that are expected to preclude her from working," *id.* at 434-35; *Nathaniel-Bishop W. B. v. Kijakazi*, No. 1:20-cv-00323-JAW, 2021 WL 4147245, at *3-4 (D. Me. Sept. 12, 2021) (rec. dec.) (declining to second guess "as a layperson" whether medical experts had properly incorporated an examining consultant's findings where those experts' opinions were not "facially inconsistent" with the

8

examining consultant's findings), *aff'd*, 2021 WL 5750391 (D. Me. Dec. 2, 2021). Furthermore, as before, even if Dr. Burkhart did ignore Dr. Gates's conclusions about stress and simple work, the ALJ found those aspects of Dr. Gates's opinion unpersuasive, so any error would be harmless. *See Yearling*, 292 F. Supp. 3d at 520. For these same reasons, I decline the Plaintiff's invitation, *see* Plaintiff's Brief at 18-19, to second guess Drs. Stahl's and Burkhart's weighing of Dr. Muncie's opinion.

The Plaintiff next argues that the ALJ and Drs. Stahl and Burkhart failed to consider the episodic nature of her impairments and limitations, *see id.* at 13, but that is simply not true, *see* Record at 20 (the ALJ stating that "waxing and waning of symptoms ha[d] been noted" in the Plaintiff's medical records); *id.* at 59 (Dr. Stahl noting a record showing the Plaintiff's "up and down" mood); *id.* at 66 (Dr. Burkhart noting a record documenting the Plaintiff's "[e]xtreme mood swings").

The Plaintiff further criticizes the ALJ's reliance on Drs. Stahl's and Burkhart's opinions because they did not see all her medical records. *See* Plaintiff's Brief at 10-11. She attempts to undermine the ALJ's finding that "the records submitted after" Drs. Stahl and Burkhart "prepared their assessments do not describe a significant worsening," Record at 22, but her arguments on this point amount to little more than pointing out evidence showing fluctuation in her mood, which is consistent with the evidence that Drs. Stahl and Burkhart reviewed, *see* Plaintiff's Brief at 10-11. Moreover, as the Commissioner highlights, *see* Commissioner's Brief (ECF No. 13) at 17, the Plaintiff's most recent treatment

9

records from 2023 indicate that her mood was stable and that she was doing well overall apart from some marital stress, *see* Record at 490, 492, 494, 496, 576.

Pointing to the ALJ's consideration of her activities of daily living, the Plaintiff suggests that it was inappropriate for the ALJ to rely on her ability to do various household tasks when discounting her allegations and the more severe medical opinions. *See* Plaintiff's Brief at 17. This point is unavailing because the ALJ was entitled to consider the Plaintiff's activities of daily living and did not rely on them exclusively. *See Huston v. Colvin*, No. 2:12-cv-00282-JAW, 2013 WL 3816615, at *9 (D. Me. July 19, 2013) ("While a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time . . . employment, an [ALJ] properly may take such activities into consideration in assessing . . . a claimant's allegations." (cleaned up)).

Finally, the Plaintiff argues that the ALJ ignored the side effects of her medication in contravention of SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). *See* Plaintiff's Brief at 19-20. This argument is undermined by the Plaintiff's own testimony at the hearing before the ALJ that, after some adjustment, her medication made her feel "[j]ittery sometimes" and "a little overstimulated, but" that was "about it." Record at 45-46. The Plaintiff does not explain how, even if the ALJ ignored these minor side effects, they would have changed the ALJ's decision. And to the extent she faults the ALJ for not considering the fatigue she experienced with some previous medications, *see* Plaintiff's Brief at 20, the ALJ clearly considered her fatigue even if he did not do so in the context of medication side effects, *see* Record

10

at 19, so any error in that regard would be harmless, *see McGinn v. O'Malley*, No. 23-1215, 2024 WL 578123, at *1 (1st Cir. Feb. 12, 2024) ("[T]hough the ALJ did not do so under the heading of 'medication side effects,' it is clear from the record that the ALJ did consider the issues [the claimant] attributes to medications effects . . . .").

The Plaintiff's remaining arguments attempting to pick apart various aspects of the ALJ's decision are simply unavailing invitations to reweigh the evidence and reach more favorable conclusions. *See Becky K. G. v. Saul*, No. 1:20-cv-00089-GZS, 2020 WL 7418974, at *5 (D. Me. Dec. 17, 2020) (rec. dec.) ("That the record could arguably support a different conclusion does not entitle the plaintiff to remand; it is for the ALJ, not the court, to draw conclusions from the evidence and resolve any conflicts therein."), *aff'd*, 2021 WL 66609 (D. Me. Jan. 7, 2021).

At bottom, the ALJ's conclusion that the Plaintiff's impairments were not severe is supported by substantial evidence, and the Plaintiff's arguments do not convince me otherwise.

### IV.  Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

Dated: April 7, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge